IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JON LEVI WOMACK                                                                    PLAINTIFF

V.                                       NO. 15-2191

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Jon Levi Womack, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for child's insurance benefits (CIB) and supplemental security income (SSI), under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff filed his applications for CIB and SSI on July 15, 2013, alleging disability since July 24, 2013, due to "cerebral palsy with spastic quadriparesis, vision, asthma, and anxiety." (Doc. 13, pp. 181, 189, 246, 249). An administrative hearing was held on August 27, 2014, at which Plaintiff appeared with counsel, and he and his mother testified. (Doc. 13, pp. 31-53).

By written decision dated September 5, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – cerebral palsy with spastic quadriparesis and asthma. (Doc. 13, p. 16). However, after

1

reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 13, p. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is limited to occasional pushing or pulling with bilateral lower extremities; no climbing; occasional balancing, stooping, kneeling, crouching, or crawling; and frequent fingering bilaterally. He must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, extreme temperatures, extreme humidity and wetness, dangerous machinery, and unprotected heights.

(Doc. 13, p. 18). With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing such jobs as fishing reel assembler, charge account clerk, and production worker (motor polarizer). (Doc. 13, p. 24).

Also in his decision, the ALJ gave a brief background of Plaintiff's case as follows:

> The claimant was allowed benefits as a child beginning November 1, 1996, and his benefits were terminated May 1, 2012. He subsequently applied for child disability benefits and supplemental security income benefits, with a protected filing date of July 15, 2013. The undersigned acknowledges that the claimant did not reach the age of 18 until July 24, 2013, but supplemental security income benefits do not become payable until the month following the application date, so the earlier protected filing date is not an issue. Further, entitlement to child disability benefits does not become effective until the child's 18th birthday. Therefore, this decision addresses the claimant's entitlement to both supplemental security income benefits and child disability benefits from July 24, 2013, his 18th birthday, through the date of this decision.

(Doc. 13, p. 14).

Subsequent to the ALJ's decision, Plaintiff requested a review of the hearing decision by the Appeals Council, which denied the request on August 12, 2015. (Doc. 13, pp. 5-7). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 11, 12).

**II.    Evidence Presented**:

Plaintiff was born in 1995, and was allowed benefits as a child beginning November 1, 1996, and his benefits were terminated May 1, 2012. (Doc. 13, p. 14). Plaintiff had been diagnosed with cerebral palsy with spastic quadriparesis early in his childhood. (Doc. 13, p. 56). As early as 2000, the Ft. Smith Public Schools began evaluating Plaintiff to determine if Plaintiff required certain special services, and thereafter, Plaintiff underwent physical therapy, speech and language evaluations, and occupational therapy evaluations. (Doc. 13, pp. 330-342, 344-350, 360-369, 373-374).

On September 28, 2009, Plaintiff was assessed by Dr. Kay Jarrett, at Shriners Hospital for Children. (Doc. 13, p. 376). Dr. Jarret noted that upon physical exam, Plaintiff was really tight in his hamstrings and right heel cord. She reported that when he ambulated, his feet rolled into a valgus position, more so on the right, and that he also had to pull up his hip to clear the right foot. (Doc. 13, p. 376). Dr. Jarrett recommended that Plaintiff go back into a right AFO(ankle-foot orthosis), which would hold his foot and ankle in a better position and would keep him from tripping and falling due to the footdrop, and indicated she would send him to orthotics to get a right hinged AFO. Plaintiff was to continue to wear a knee immobilizer at night and the right AFO was to be worn 23 out of 24 hours a day. (Doc. 13, p. 376). Thereafter, Plaintiff had to be sent back to orthotics to get a better AFO fit. (Doc. 13, p. 370).

On February 2, 2012, when Plaintiff saw Dr. Philip Edwin Gates, at Shriners Hospital, for a biannual neuromuscular evaluation, it was reported that Plaintiff was in custom molded shoe inserts full time during the day and had no major complaints, problems, or concerns. (Doc. 13, p. 385). It was also reported that he wore knee immobilizers at night,

3

which he alternated, did stretching at home, and was receiving no therapy at that point. (Doc. 13, p. 385). On physical exam that day, Plaintiff had mild tightness in his hamstrings, had knee flexion contractures and some tightness in the heel cord on the right side, had positive clonus bilaterally with bilateral valgus feet, and walked and rolled into some hindfoot valgus. (Doc. 13, p. 385). Dr. Gates thought Plaintiff walked better with the use of the shoe inserts, and gave the following impression: Diplegic cerebral palsy with tightness in his right heel cord and bilateral hamstrings with knee flexion contractures bilaterally. (Doc. 13, p. 385).

On February 9, 2012, Plaintiff visited Dr. Richard Aclin at UAMS Family Medical Center. (Doc. 13, p. 414). At that time, it was reported that Plaintiff still had tightness in his hamstrings and right heel cord. (Doc. 13, p. 414). Dr. Aclin also reported that Plaintiff's ADHD was doing well and that he was making progress in school. Dr. Aclin's impression was:

> Problem #1:   Spastic diplegic cerebral palsy
>                   Assessed as: Improved
> Problem #2:   Attention Deficit Hyperactivity Disorder
>                   Assessed as: Improved

(Doc. 13, p. 415).

On June 7, 2012, Dr. Aclin reported that Plaintiff had good response to stimulant medication, with no side effects, and had done very well on his medications. (Doc. 13, p. 417). With respect to Plaintiff's musculoskeletal condition, no deformity or scoliosis was noted, and Plaintiff was assessed as having normal posture and gait for his age. (Doc. 13, p. 419). There was some persistent spasticity in his lower extremities, right greater than left. It was reported that Plaintiff had some problems with anxiety, and that he had been seen at Perspectives, where he had been prescribed Celexa, with no untoward effects. (Doc. 13, p. 419).

4

In a June 8, 2012 Psychoeducational Evaluation Summary by Ft. Smith Public Schools, it was reported that Plaintiff had recently completed the 11th grade and that he had never been held back in school. (Doc. 13, p. 332). It was also reported that based on the physician's statement, test results and adverse affect in the classroom, Plaintiff continued to be eligible for special education services under the disability category of Orthopedic Impairment. (Doc. 13, p. 334). In that same evaluation, it was reported that Plaintiff's general education teacher indicated that Plaintiff was proficient in all skills listed for his current grade level, and that Plaintiff's performance on the CELF-4 indicated that his language skills in all areas were at or above chronological age expectancies. (Doc. 13, p. 337). It was noted that Plaintiff did not appear to present with a speech/language impairment. (Doc. 13, p. 337).

On August 20, 2012, Plaintiff presented himself to Vista Health Outpatient Services (Vista Health), where he was diagnosed with generalized anxiety disorder and given a GAF score of 45. (Doc. 13, p. 402). His primary symptoms included difficulty working with others due to emotions being unstable, and he had difficulty letting problems go and would ruminate about them for extended periods. (Doc. 13, p. 402).

On August 29, 2012, Plaintiff was again seen by Dr. Gates for a routine evaluation of his "lifelong+moderate diplegic cerebral palsy." (Doc. 13, p. 387). Range of motion showed significant tightness with bilateral hamstrings and some tightness noted with the right heel cord. (Doc. 13, p. 387). He had bilateral valgus feet, much worse on the right than on the left, and Dr. Gates recommended that he get back into the knee immobilizer on alternating legs at night, and really focus on hamstring and heel cord stretches. (Doc. 13, p. 387).

On October 10, 2012, Plaintiff was seen at Vista Health and diagnosed with obsessive compulsive disorder (OCD) and anxiety, and given a GAF score of "48?" (Doc. 13, p. 401).

It was reported that Plaintiff's OCD was a functional impairment. (Doc. 13, p. 401). He was seen at Vista Health again on November 16, 2012, and January 16, 2013, and at the January visit, increased therapy was suggested for a while. (Doc. 13, pp. 405- 406).

On March 6, 2013, Dr. Gates examined Plaintiff and reported that his range of motion measurements, as well as manual muscle testing, were obtained. (Doc. 13, p. 380). Plaintiff still had some tightness in his hamstring and heel cords bilaterally, but it did show some improvement from the previous measurements. (Doc. 13, p. 380). He had positive clonus bilaterally as well as bilateral valgus foot positioning, and there was an approximately 1 cm leg length discrepancy with the right being shorter than the left. Plaintiff had full painless range of motion to his shoulders, elbows, and wrists bilaterally, and there was no evidence of scoliosis when sitting. On ambulation, Plaintiff had a bilateral heel strike with bilateral valgus foot position and vaulted slightly with his left leg. It was reported that per the occupational therapy evaluation, Plaintiff did not have any needs. (Doc. 13, p. 380). Dr. Gates' impression was moderate diplegic cerebral palsy.

On April 19, 2013, a Vista Health report indicated that Plaintiff had good response to intervention, and was on schedule to graduate from high school the next month. (Doc. 13, p. 404).

Plaintiff's last visit to Dr. Gates at Shriners Hospital was on June 5, 2013, because he would turn 18 years old the next month. (Doc. 13, p. 391). Dr. Gates found Plaintiff had full range of motion within the upper extremities, and his lower extremities had some mild tightness in his hamstrings. However, Dr. Gates indicated that for the most part, Plaintiff looked "quite good, ambulatory without major concerns." (Doc. 13, p. 391). Some mild scoliosis was indicated at a forward bending position with good range of motion within his

spine, and no physical or occupational therapy needs were appreciated that day. (Doc. 13, p. 391).

On June 14, 2013, a report from Vista Health indicated that Plaintiff had a "good overall" response to intervention. (Doc. 13, p. 403).

On July 12, 2013, Plaintiff began seeing Dr. Christopher Fortson, at UAMS Family Medical Center. (Doc. 13, p. 423). Dr. Fortson noted that other than known spastic cerebral palsy and chronic low BMI, Plaintiff was developmentally and physically appropriate for his age. (Doc. 13, p. 426).

On August 28, 2013, non-examining consultant, Sheri Simon, Ph.D., completed a Psychiatric Review Technique report, opining that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration. (Doc. 13, p. 62). Dr. Simon also completed a Mental RFC Assessment, finding that Plaintiff had sustained concentration and persistence limitations; was moderately limited in his ability to maintain attention and concentration for extended periods; was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (Doc. 13, pp. 65-67). Also on August 28, 2013, non-examining consultant, Dr. Lucy Sauer, completed a RFC Assessment, wherein she opined that Plaintiff could perform light work with certain environmental limitations. (Doc. 13, pp. 63-64).

7

On October 11, 2013, Plaintiff presented to Valley Behavioral Health System, and was diagnosed as follows:

| | |
|---|---|
| Axis I: | Gen. Anx. ADHD |
| Axis II: | - |
| Axis III: | CP |
| Axis IV: | Educ. Soc. |
| Axis V: | 58-60 |

(Doc. 13, p. 444).

On September 16, 2013, a Medical Source Statement (physical) was completed by Dr. Aclin, wherein he opined that Plaintiff could occasionally lift and/or carry 10 pounds; stand and/or walk at least two hours in an eight hour workday; was limited in pushing and/or pulling with his lower extremities because of weakness due to spastic cerebral palsy; could never climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally balance, kneel, crouch, and crawl, because of spastic cerebral palsy and easy muscle fatigue; and was limited in fingering (fine manipulation) and in temperature extremes, dust, humidity/wetness and hazards because of spastic cerebral palsy, balance problems, and gait problems. (Doc. 13, pp. 455-457).

On November 4, 2013, Patricia J. Walz, Ph.D., conducted a Mental Diagnostic Evaluation. (Doc. 13, p. 448). Dr. Walz noted that Plaintiff had not had a psychiatric hospitalization but had counseling, and was still being seen at Vista Health, which was now called River Valley, once a week. (Doc. 13, p. 448). Dr. Walz found Plaintiff needed no assistance with his activities of daily living, got dressed every day, used to use leg braces but did not any more, utilized a nebulizer when he had an asthma attack once or twice a year, did chores, tried to cook, helped clean up, and took care of the dogs. (Doc. 13, p. 450). She diagnosed him as follows:

|          |                                                                            |
|----------|----------------------------------------------------------------------------|
| Axis I:  | Adjustment reaction with depressed mood, mild Attention deficit disorder, mixed type |
| Axis II: | No diagnosis                                                               |
| Axis V:  | 65 to 75.                                                                  |

(Doc. 13, p. 451). Dr. Walz further noted that Plaintiff could shop independently, had friends at school, liked stories and created dresses. (Doc. 13, p. 451). She found his speech to be clear and intelligible; his intellectual functioning was found to be in the low average to average range; he had impairment in attention and concentration related to his ADD; he persisted well; and the speed of information processing was variable. (Doc. 13, p. 451-452).

On December 13, 2013, non-examining consultant, Brad F. Williams, Ph.D., completed a Psychiatric Review Technique report, opining that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Doc. 13, pp. 106-109). In addition, on that same date, non-examining consultant, Dr. Jerry Thomas, completed a Physical RFC Assessment, opining that Plaintiff was capable of light work with certain environmental limitations. (Doc. 13, p. 109).

On July 31, 2014, Dr. Fortson completed a Medical Source Statement, finding Plaintiff could occasionally lift and/or carry 10 pounds; stand and/or walk less than two hours in an eight-hour workday; push and/or pull was limited in his lower extremities because of weakness due to spastic cerebral palsy and easy fatigue; he could never climb ramps, stairs, ladders, ropes, or scaffolds; he could occasionally balance, kneel, crouch, and crawl because of spastic cerebral palsy and easy muscle fatigue; and he was limited in fingering (fine manipulation) because of spasticity, decreased fine motor movement. (Doc. 13, pp. 462-464). Dr. Fortson also found Plaintiff was limited in temperature extremes, dust, humidity/wetness,

9

hazards, fumes, odors, chemicals, and gases because of spastic cerebral palsy, balance problems, and gait problems. (Doc. 13, p. 464).

During the relevant time period, Plaintiff had no problems with personal care; prepared his own meals; did the dishes and laundry, cleaned his room, and picked up the trash indoors and outdoors. (Doc. 13, pp. 268-270, 277). He also shopped in stores for food, clothes, and decorations weekly. (Doc. 13, p. 270). Plaintiff wore shoe inserts and glasses, which were both prescribed. (Doc. 13, p. 271).

In his Mother's Function Report – Adult-Third Party, dated August 10, 2013, Plaintiff's mother reported that on Mondays, Wednesdays, and Fridays, Plaintiff slept in, got up, did homework, went to class at 1-2, came home, laid down, watched television, showered, ate, and worked on the computer or did his homework. (Doc. 13, p. 296). On Tuesdays, he had class all day from 8:00-1:45 pm, came home, ate, rested, and went to evening class from 5:30 to 8:30 pm. (Doc. 13, p. 296). Plaintiff had class on Thursdays from 8 to 10:15; 12:30 to 1:45 pm; and 5:30 to 8:30 pm. (Doc. 13, p 296).

At the hearing, Plaintiff testified that he was taking a mathematics course, a composition course, and three theater classes in college. (Doc. 13, p. 35). He testified that it was hard for him to pick up and hold things if they were over a certain weight, and that he could lift about 10 to 15 pounds without any pain, but could not do that all day. (Doc. 13, p. 39). He testified that he was writing a book and that he could not walk long distances because he would tire out very easily, and that his muscles gave out very easily. (Doc. 13, p. 41). Plaintiff testified that he had problems with his asthma about 75% of the year. (Doc. 13, p. 41). Plaintiff's Mother testified that Plaintiff helped do chores around the house, but there were just some things he could not do because of the weakness of his hands. (Doc. 13, pp.

44-45). She stated that Plaintiff had been diagnosed with OCD and that he saw a counselor twice a month, and had been put on some medication, which did help some. (Doc. 13, p. 47).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42

11

U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff argues that the ALJ failed to take into consideration his fatigue, his restrictive handling/fingering requirements, and his easy muscle fatigue in the RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

12

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

The Court finds it necessary to recommend that this matter be remanded in order for the ALJ to more carefully determine Plaintiff's handling and fingering limitations. As indicated earlier, in his Medical Source Statement dated September 16, 2013, Dr. Aclin opined that Plaintiff was, inter alia, limited in fingering (fine manipulation). In addition, in his Medical Source Statement dated July 31, 2014, Dr. Fortson found Plaintiff was limited in fingering (fine manipulation). However, it is unclear to what extent Plaintiff's fingering is limited, and the ALJ, after giving substantial weight to Dr. Aclin's opinion, found Plaintiff was limited to "frequent fingering bilaterally." At the hearing, in response to a question from Plaintiff's attorney, the VE testified that the jobs he found Plaintiff could perform would not qualify if Plaintiff was limited in reaching, handling and fingering on an occasional basis. (Doc. 13, pp. 52-53).

Based upon the foregoing, the undersigned recommends that this matter be reversed in order for the ALJ to further develop the record and obtain clarification regarding Plaintiff's handling and fingering limitations, and to then re-evaluate Plaintiff's RFC. Once

determined, he should then present a proper hypothetical question to the VE, incorporating the relevant limitations.

**V.     Conclusion**:

Accordingly, the Court recommends that this matter be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 26th day of September, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE